UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DAMION L. McCONAHY,                    )  Case No. CV 08-2630 JC
                                       )
                    Plaintiff,         )
                                       )  MEMORANDUM OPINION
          v.                           )
                                       )
                                       )
MICHAEL J. ASTRUE,                     )
Commissioner of Social                 )
Security,                              )
                                       )
                    Defendant.         )
_____  )

## I.    SUMMARY

     On April 24, 2008, plaintiff Damion L. McConahy ("plaintiff") filed a
Complaint seeking review of the Commissioner of Social Security's denial of
plaintiff's application for benefits.  The parties have filed a consent to proceed
before a United States Magistrate Judge.

     This matter is before the Court on the parties' cross motions for summary
judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The
Court has taken both motions under submission without oral argument.  See Fed.
R. Civ. P. 78; L.R. 7-15; April 25, 2008 Case Management Order, ¶ 5.

1    Based on the record as a whole and the applicable law, the decision of the

2    Commissioner is AFFIRMED.  The findings of the Administrative Law Judge

3    ("ALJ") are supported by substantial evidence and are free from material error.[1]

4    **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

5    **DECISION**

6    On March 31, 2005, plaintiff filed an application for Security Income

7    benefits, asserting he became disabled on July 12, 1992.  (AR 21).  The ALJ

8    examined the medical record and heard testimony from plaintiff, who was

9    represented by counsel, and a vocational expert on March 8, 2007.  (AR 259-75).

10    On April 23, 2007, the ALJ determined that plaintiff was not disabled

11    through the date of the decision.  (AR 21-26).  Specifically, the ALJ found:

12    (1) plaintiff suffered from the following severe impairments:  Status post gunshot

13    wound to the left hip and chronic mechanical back pain (AR 22); (2) plaintiff

14    suffered from a nonsevere depressive disorder (AR 22); (3) plaintiff's impairments

15    or combination of impairments did not meet or medically equal one of the listed

16    impairments (AR 22); (4) plaintiff retained the residual functional capacity to

17    perform sedentary work, could lift/carry up to 10 pounds, and could "do

18    posturals," but was "restricted by mild limitations in attention, concentration,

19    understanding, and memory" (AR 23, 25); (5) plaintiff could not perform his past

20    relevant work (AR 24); (6) plaintiff could perform other work that exists in

21    significant numbers in the national economy (AR 25); and (7) plaintiff's

22    allegations regarding his limitations were not entirely credible.  (AR 23).

23    The Appeals Council denied plaintiff's application for review.  (AR 8-10).

24

25

26

27    [1]The harmless error rule applies to the review of administrative decisions regarding
disability.  See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196

28    (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social
Ssecurity Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of
application of harmless error standard in social security cases).

1 **III.   APPLICABLE LEGAL STANDARDS**

2     **A.   Sequential Evaluation Process**

3       To qualify for disability benefits, a claimant must show that he is unable to

4 engage in any substantial gainful activity by reason of a medically determinable

5 physical or mental impairment which can be expected to result in death or which

6 has lasted or can be expected to last for a continuous period of at least twelve

7 months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C.

8 § 423(d)(1)(A)).  The impairment must render the claimant incapable of

9 performing the work he previously performed and incapable of performing any

10 other substantial gainful employment that exists in the national economy.  Tackett

11 v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

12       In assessing whether a claimant is disabled, an ALJ is to follow a five-step

13 sequential evaluation process:

14     (1)  Is the claimant presently engaged in substantial gainful activity?  If

15         so, the claimant is not disabled.  If not, proceed to step two.

16     (2)  Is the claimant's alleged impairment sufficiently severe to limit

17         his ability to work?  If not, the claimant is not disabled.  If so,

18         proceed to step three.

19     (3)  Does the claimant's impairment, or combination of

20         impairments, meet or equal an impairment listed in 20 C.F.R.

21         Part 404, Subpart P, Appendix 1?  If so, the claimant is

22         disabled.  If not, proceed to step four.

23     (4)  Does the claimant possess the residual functional capacity to

24         perform his past relevant work?  If so, the claimant is not

25         disabled.  If not, proceed to step five.

26 ///

27 ///

28 ///

3

(5)     Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

### B.     Standard of Review

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

4

1  **IV.   FACTS**

2      **A.      Plaintiff's Statements/Testimony Regarding His Mental**

3              **Condition**

4      In an undated function report, plaintiff stated, *inter alia*, that he:  (i) had

5  "bad dreams at night" and "[woke] up scared" (AR 60); (ii) did not follow written

6  instructions very well (AR 64); (iii) was a "little better" at following spoken

7  instructions; (iv) did not handle stress or changes in routine very well (AR 65);

8  and (v) "[did not] like to be around people" and "like[d] to be alone" (AR 65).

9  However, in the same report, plaintiff indicated that his illness, injuries and

10 condition did not affect his memory, his ability to complete tasks, his

11 concentration, his understanding, his ability to follow instructions, and his ability

12 to get along with others.  (AR 64).[2]

13     At the hearing, plaintiff testified:  He suffered from constant pain from his

14 back impairments.  (AR 265-69).  He had been diagnosed with dyslexia in fourth

15 grade, and was taking antidepressants because he was short-tempered due to pain

16 and his other medications.  (AR 270).  In response to the ALJ's question asking

17 plaintiff why he could not work, plaintiff responded:   "Because the pain and then

18 the medication I'm on I can't focus and sitting down for long periods of time just –

19 the pain and focusing issue."  (AR 267).

20     **B.      Psychiatric Evaluation**

21     On August 19, 2005, Dr. Ernest Bagner, a consulting psychiatrist,

22 performed a complete psychiatric evaluation of plaintiff.  (AR 235-38).

23     Plaintiff told Dr. Bagner:   He had "mood swings, anger, [and] anxiety."

24 (AR 235).  He experienced "nervousness, feelings of helplessness and

25 _____

26     [2]On May 31, 2005, plaintiff's mother reported:  Plaintiff (i) had bad dreams; (ii) stayed to
   himself a lot; (iii) was so-so at following written instructions; (iv) was able to follow spoken
27 instructions most of the time; (v) got along fine with authority figures; (vi) badly handled stress;
   and (vii) did not handle changes in routine well.  (AR 68, 72, 73).  However, she also indicated
28 that plaintiff's illness, injuries and condition did not affect his memory or his ability to complete
   tasks, to concentrate, to understand, to follow instructions, or to get along with others.  (AR 72).

1  hopelessness and difficulty with memory." (AR 235). He suffered from "auditory

2  hallucinations of his name being called," and had experienced suicidal ideations in

3  the past." (AR 235). He had difficulty falling and staying asleep. (AR 235). He

4  had "experienced fluctuations in weight and appetite" but no other "depressive

5  symptoms." (AR 235). He was able to: (i) dress and bathe himself; (ii) do

6  household chores; (iii) manage money; and (iv) get around in a car. (AR 236). He

7  reported having a good relationship with his family. (AR 236). He felt depressed.

8  (AR 236).

9      Dr. Bagner noted that plaintiff had no history of psychiatric treatment, and

10  was not then seeing a psychiatrist or counselor. (AR 236, 238).

11      Dr. Bagner opined: (i) plaintiff's speech was "intact and coherent," but

12  mildly decreased in rate, rhythm and volume (AR 237); (ii) his thought processes

13  were "tight," with "no flight of thought, looseness of association, thought blocking

14  or distractibility" (AR 237); (iii) he appeared to have average intelligence;

15  (iv) he was "alert and oriented to person and place" (AR 237); and (v) he appeared

16  to have "normal reality contact" with no evidence of auditory or visual

17  hallucinations, or paranoid or grandiose delusions during the interview (AR 237).

18      Dr. Bagner diagnosed plaintiff with "mood disorder, not otherwise

19  specified," and "borderline intellectual functioning."[3] (AR 237). He assigned

20  plaintiff a current global assessment of functioning ("GAF") score of 72/100.[4]

21  (AR 237).

22

23      [3]Borderline intellectual functioning means an I.Q. within the 71-84 range. Tagger v.

24  Astrue, 536 F. Supp. 2d 1170, 1179 n.11 (C.D. Cal. 2008) (citation omitted).

25      [4]A GAF score is a rough estimate of an individual's psychological, social, and

26  occupational functioning used to reflect the individual's need for treatment. See Diagnostic and

    Statistical Manual of Mental Disorders p. 32 (4th ed. 1994 (DSM-IV)). A GAF score between 71

27  and 80 indicates that "[i]f symptoms are present, they are transient and expectable reactions to

    psychosocial stressors (e.g., difficulty concentrating after family argument); no more than slight

28  impairment in social, occupational, or school functioning (e.g., temporarily falling behind in

    schoolwork). DSM-IV at 32.

In terms of a functional assessment, Dr. Bagner opined that plaintiff would have:  (i) zero to mild limitations interacting with supervisors, peers and the public, and in maintaining concentration and attention and completing simple tasks; (ii) mild limitations completing complex tasks and completing a normal workweek without interruption; and (iii) mild to moderate limitations handling normal stresses at work.  (AR 238).

Dr. Bagner also stated that with psychiatric treatment plaintiff "should be significantly better in less than six months."  (AR 238).

## C.    The Vocational Expert

At the administrative hearing, the ALJ posed the following question to the vocational expert:

Please assume I find a person who's 31 years old, has a limited education.  Further assume I find they can do sedentary work. They're further limited to frequent climbing, balancing, stooping, kneeling, crouching, crawling, they have a mild limitation on attention, concentration, understanding and memory.

(AR 272).  The vocational expert opined that a person with the foregoing characteristics (*i.e.*, plaintiff), could perform unskilled, sedentary jobs like "assembly" (*e.g.* "button and notion assembler") and production laborer (*e.g.*, "jewelry stringer"), each existing in significant numbers in the local and national economies.  (AR 273).

## D.    The ALJ's Assessment of Plaintiff's Mental Condition

As noted above,  the ALJ determined that plaintiff had a "nonsevere depressive disorder," and found that plaintiff did not have a severe mental impairment.  (AR 22).

With respect to plaintiff's alleged mental condition, the ALJ found plaintiff to be only "partially credible."  (AR 24).  The ALJ stated that plaintiff's alleged mental limitations were "not supported by the treating record."  (AR 23).  He

1 noted that the record contained "no doctor reports of hallucinations, delusions,

2 paranoia, irritability or any inability to understand treatment programs," and

3 discounted plaintiff's complaints because of his lack of any ongoing psychiatric

4 treatment and his inability to give more than "vague descriptions" of his

5 symptoms.  (AR 23, 24).

6         With respect to Dr. Bagner's examination, the ALJ essentially determined

7 that it revealed no psychological limitations on plaintiff's functioning.  (AR 24).

8 The ALJ pointed out that plaintiff displayed "no cognitive deficits and no thought

9 intrusions during [the] formal examination, that he "attended and concentrated

10 well" and that he "performed simple mathematics and showed no significant

11 memory deficits."  (AR 24).  The ALJ noted that although plaintiff claimed to be

12 distant toward people, he told Dr. Bagner that his "relationships with family

13 members were good" and that his activities of daily living included visiting with

14 friends.  (AR 23).  The ALJ also pointed out that the GAF score assigned to

15 plaintiff by Dr. Bagner  (72/100) represented "a nonsevere level."  (AR 236).

16         Although the ALJ recognized that plaintiff's chronic pain, stiffness and

17 other daily limitations "could reasonably cause stress and anxiety," he determined

18 that plaintiff nonetheless remained "capable of doing unskilled jobs where

19 concentration and attention [were] not important factors[,]" noting that unskilled

20 jobs are generally jobs working with objects and are repetitive in nature and do not

21 require extensive contact with people."  (AR 24).

22         Thus, the ALJ concluded that plaintiff could perform only sedentary work,

23 with additional nonexertional limitations due to depression, which consisted of

24 "mild limitations in attention, concentration, understanding, and memory."  (AR

25 25).  This determination ruled out plaintiff's past work at step four, but left

26 plaintiff with the residual functional capacity to work in the sedentary, unskilled

27 positions about which the vocational expert testified.  (AR 25).

28 ///

1   **V.     DISCUSSION**

2        **A.     The ALJ's Step Two Determination Is Supported by Substantial**

3        **Evidence and Is Free from Material Error**

4        Plaintiff contends that the ALJ erroneously failed to find that plaintiff's

5   "borderline intellectual functioning" constituted a severe impairment.  (Plaintiff's

6   Motion at 4-5).  This Court concludes that the ALJ did not err, let alone materially

7   err, in concluding that plaintiff did not suffer from a severe mental impairment

8   based upon Dr. Bagner's assessment that plaintiff had borderline intellectual

9   functioning.

10       Step two is "a de minimis screening device [used] to dispose of groundless

11  claims."  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  Applying the

12  normal standard of review to the requirements of step two, a court must determine

13  whether an ALJ had substantial evidence to find that the medical evidence clearly

14  established that the claimant did not have a medically severe impairment or

15  combination of impairments.  Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005)

16  (citation omitted).

17       An impairment is severe if it significantly limits one's ability to perform

18  basic work activities.  20 C.F.R. § 416.920(c).  An impairment is "non-severe" if it

19  does not significantly limit one's physical or mental ability to do basic work

20  activities.  20 C.F.R. § 416.921(a).  Basic work activities are the "abilities and

21  aptitudes necessary to do most jobs," such as (1) physical functions like walking,

22  standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling; (2) the

23  capacity for seeing, hearing, and speaking; (3) understanding, carrying out, and

24  remembering simple instructions; (3) the use of judgment; (5) responding

25  appropriately to supervision, co-workers, and usual work situations; and

26  (6) dealing with changes in a routine work setting.  20 C.F.R. § 416.921(b).  An

27  impairment or a combination of impairments may be found not medically severe

28  ///

9

1  only if evidence clearly establishes a slight abnormality that has no more than

2  minimal effect on an individual's ability to work.  Webb, 433 F.3d at 687.

3      First, although Dr. Bagner diagnosed plaintiff with borderline intellectual

4  functioning, he also (i) opined that plaintiff appeared to have average intelligence;

5  (ii) assigned him a GAF score consistent with no more than a slight impairment in

6  occupational functioning; and (iii) opined that plaintiff had zero to mild

7  limitations maintaining concentration and attention and completing simple tasks

8  and only mild limitations completing complex tasks and completing a normal

9  workweek without interruption.[5]  Dr. Bagner thus effectively concluded that

10  plaintiff's borderline intellectual functioning did not significantly limit his ability

11  to perform basis work activities.  Moreover, plaintiff, in responding to the ALJ's

12  question at the administrative hearing about why he could not work, did not testify

13  that his alleged "borderline intellectual functioning" impaired his ability to work.

14  Contrary to the facts involved in the non-binding cases upon which plaintiff relies,

15  the facts in the instant case do not warrant a conclusion that the ALJ erred in

16  failing to equate Dr. Bagner's "borderline intellectual functioning" diagnosis with

17  the existence of a severe impairment.  Rather, the record reflects that the ALJ had

18  substantial evidence to find that the medical evidence clearly established that

19  plaintiff did not have a medically severe mental impairment despite the diagnosis

20  of borderline intelligence.

21      Second, even if the facts here and the cases cited by plaintiff mandated a

22  finding that the "borderline intellectual functioning" diagnosis equated to the

23  existence of a severe mental impairment, the ALJ's failure to so find here was

24  --------

25      [5]To the extent Dr. Bagner's opinion regarding plaintiff's intellectual functionality is

26  ambiguous or internally inconsistent, it was within the province of the ALJ to resolve such
   ambiguity as he did.  See also Lewis v. Apfel , 236 F.3d 503, 509 (9th Cir. 2001) (ALJ is

27  responsible for resolving conflicts and ambiguities in the evidence presented); Andrews v.
   Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (when the evidence "admits of more than one

28  rational interpretation," the court must uphold the administrative decision); Allen v. Heckler, 749
   F.2d 577, 579 (9th Cir. 1984) (it is the ALJ's role to resolve conflicts in the medical evidence).

1   harmless.  Despite the step two determination, the ALJ clearly and expressly

2   considered Dr. Bagner's opinions regarding plaintiff's mental condition in later

3   steps of the sequential analysis and in making his residual functional capacity

4   assessment.  As noted above, Dr. Bagner apparently held the view that plaintiff's

5   intellectual functioning had no more than a minimal effect on plaintiff's ability to

6   work.  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultative

7   examiner's opinion on its own constituted substantial evidence, because it rested

8   on independent examination of claimant).

9           **B.      The ALJ Did Not Materially Err in Failing Expressly to Include a**

10                    **Stress Limitation in the Residual Functional Capacity Assessment**

11          Plaintiff contends that the ALJ erred in failing to include in the residual

12   functional assessment, Dr. Bagler's "stress limitation," *i.e.*, Dr. Bagler's

13   assessment that plaintiff had mild to moderate limitations handling normal stresses

14   at work.  (AR 238).  This Court disagrees.

15          As noted above, the ALJ expressly recognized that plaintiff's chronic pain,

16   stiffness and other daily limitations "could reasonably cause stress and anxiety,"

17   and considered such fact in limiting plaintiff only to unskilled jobs which by their

18   nature, are generally repetitive, involve working with objects, and do not require

19   extensive contact with people.  In light of the foregoing, it is reasonable to infer

20   from the ALJ's decision that he concluded that unskilled jobs are not stressful or

21   are only minimally stressful, and thus, that he accounted for the stress limitation

22   by limiting plaintiff to unskilled jobs.

23          **C.      The ALJ Did Not Materially Err at Step Five**

24          To the extent plaintiff contends that the ALJ's determination at step five is

25   faulty because the ALJ did not include a stress limitation in plaintiff's residual

26   functional capacity assessment, this Court disagrees.  As discussed above, it can

27   reasonably be inferred from the ALJ's decision that he accounted for the stress

28   limitation by limiting plaintiff to unskilled jobs.  Given that fact, and the fact that

1  the vocational expert likewise limited plaintiff to unskilled jobs, this Court

2  concludes that the ALJ's step five determination is supported by substantial

3  evidence and is free from material error.[6]  See Tackett, 180 F.3d at 1101

4  (vocational expert's testimony may constitute substantial evidence of a claimant's

5  ability to perform work which exists in significant numbers in the national

6  economy when ALJ poses a hypothetical question that accurately describes all of

7  the limitations and restrictions of the claimant that are supported by the record).

8  **VI.    CONCLUSION**

9         For the foregoing reasons, the decision of the Commissioner of Social

10  Security is AFFIRMED.

11         LET JUDGMENT BE ENTERED ACCORDINGLY.

12  DATED: May 15, 2009

13                                              /s/
                                    _____

14                                    Honorable Jacqueline Chooljian

15                                    UNITED STATES MAGISTRATE JUDGE

26  _____

27        [6]Any error by the ALJ is not stating in the hypothetical question that plaintiff was limited
    to unskilled work was harmless as the vocational expert limited plaintiff to unskilled work and

28  the ALJ ultimately concluded at step five that the jobs that plaintiff could perform which existed
    in significant numbers were unskilled.